UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ANDRE NATHANIEL JACKSON,

        Plaintiff,

        v.                                              Case No. 23-C-1156

JA CORAL KOPP,
LT. MARY RUECHEL,
NURSE NEUMEIER,
JODY MALONEY, and
CPL. LONGSINE,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Andre Nathaniel Jackson, who is currently incarcerated at the Oconto County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Jackson's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Jackson has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Jackson has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $12.14. Jackson's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Jackson explains that he was booked into the jail on November 6, 2021. He states that not long after, he began to experience excruciating pain in his left side, around his kidney area. Jackson states that in early December he noticed that his urine was very dark and that there was blood in his urine. Over the next couple of months, Jackson filed medical requests. He states that Nurse Neumeier confirmed there was blood in his urine and gave him Tylenol for his pain. Jackson asserts that in February 2022 he began to bleed when he defecated. He states that an officer confirmed this. Jackson asserts that he continued to complain about increasing pain, and Nurse Neumeier told him the provider had ordered a urinalysis and culture, which had to be approved. According to Jackson, on March 1, 2022, he was released from jail on bond, but he missed a court date a week later, so a warrant was put out for his arrest. Jackson explains that he missed the court date because he was attending his cousin's funeral. He explains that he went to the hospital because of his kidney pain, but he was arrested on May 21, 2022, and booked back into the jail, so he did not receive any treatment. Dkt. No. 1 at 3-5.

On July 27, 2022, Jackson was transferred to prison, where he complained about his kidney pain. He states that he was given stool softeners and pills to help him urinate, but providers could not figure out what was wrong with him. On March 21, 2023, he was extradited to the jail because he was facing new charges. He states that on June 12, 2023, he started experiencing the same excruciating pain. Jackson asserts that he put in another medical request and was told by Nurse Jody Maloney to give a urine sample; he was also given Tylenol for his pain. Jackson explains that the Tylenol did not help. In the next few weeks, Jackson submitted three additional medical requests. According to Jackson, he learned that Nurse Neumeier no longer worked at the jail. Also, Nurse Maloney allegedly told him that his test results came back negative (it is not clear

3

Case 1:23-cv-01156-WCG    Filed 10/19/23    Page 3 of 8    Document 9

what Jackson was being tested for). Jackson explains that he informed Nurse Maloney that last time the sample had to be sent to a specialist; she allegedly told him that she would add a notation to his records with that information. *Id.* at 5-6.

Jackson asserts that he was seen by the provider at her next available appointment, during which the provider ran a blood test (again, it is not clear what Jackson was being tested for). Jackson asserts that twice in July 2023 he submitted medical requests explaining that he was in so much pain he could not sleep at night. Jackson allegedly clarified that the Tylenol and ibuprofen were not working, and he asked to go to the hospital. Jackson asserts that, to this day, he has not seen a doctor, nor has anything else been done to diagnose and treat his pain. Finally, Jackson asserts that on July 18, 2023, Corporal Longsine noted on one of his medical forms that Jackson was observed doing pushups and working out without any apparent pain. Jackson asserts that she had no business making a notation on one of his medical forms. He suspects that her comment may be why he has not received any treatment.

### THE COURT'S ANALYSIS

Jackson appears to have been a pretrial detainee at the relevant times, so claims related to his medical care arise under the Fourteenth Amendment. Under *Miranda v. County of Lake*, such claims are subject only to the objective unreasonableness standard. 900 F.3d 335, 352 (7th Cir. 2018). To state a claim, the Court must be able to reasonably infer from Jackson's allegations that Defendants "acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case" and that the challenged conduct was objectively unreasonable. *McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018) (citations omitted).

With the foregoing standard in mind, Jackson states a claim against Nurse Maloney based on allegations that she failed to reasonably address his complaints of kidney pain. Although Jackson acknowledges that she provided him with Tylenol and that his blood and urine test results were negative, the Court can reasonably infer that her alleged failure to pursue other options to treat his pain and/or to escalate his complaints to a doctor despite his complaints of increasing pain was objectively unreasonable.

Jackson does not, however, state a claim against the remaining Defendants. As to Nurse Neumeier, Jackson asserts that he was under her care from early December until the end of February, at which time he was released. During that time, Nurse Neumeier gave Jackson Tylenol for his pain and escalated his complaints to a provider. According to Jackson, just before he was released, Nurse Neumeier informed him that the provider was waiting for approval to administer a urinalysis and culture. The tests were apparently not performed because Jackson was released. The Court cannot reasonably infer from these allegations that Nurse Neumeier's responses to his complaints during the brief time he was under her care were objectively unreasonable.

Nor does Jackson state a claim against Lt. Mary Ruechel or JA Coral Kopp who responded to Jackson's grievances and informed him that they would speak to the nursing staff and add him to the list to see the doctor. Non-medical officials are entitled to "rely on the expertise of medical personnel" and "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citing *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). Ruechel and Kopp did not ignore Jackson's complaints; they referred the complaints to medical providers who were trained to address them. Such conduct is not objectively unreasonable. And to the extent they did not affirm his grievances, the Seventh Circuit has long

5

held that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Finally, Jackson fails to state a claim against Longsine who allegedly commented in response to one of Jackson's requests for medical care that she had observed Jackson working out. Jackson asserts that making a note on his medical record violated his rights under the Health Insurance Portability and Accountability Act (HIPPA), but HIPPA does not furnish a private right of action. *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011).

**IT IS THEREFORE ORDERED** that Jackson's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that JA Coral Kopp, Lt. Mary Ruechel, Nurse Neumeier, and Cpl. Longsine are **DISMISSED** because Jackson fails to state a claim against them.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Jody Maloney pursuant to Federal Rule of Civil Procedure 4. Jackson is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Maloney shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the agency having custody of Jackson shall collect from his institution trust account the $337.86 balance of the filing fee by collecting monthly payments from Jackson's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Jackson is transferred to another institution, the transferring institution shall forward a copy of this Order along with Jackson's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Jackson is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Jackson is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Jackson may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 18th day of October, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge